An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

PHILLIP SMITH,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 58858

FILED

FEB 13 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of attempted murder with the use of a deadly weapon, battery with the use of a deadly weapon resulting in substantial bodily harm, robbery with the use of a deadly weapon, robbery with the use of a deadly weapon of a victim 60 years of age or older, first-degree kidnapping with the use of a deadly weapon of a victim 60 years of age or older, coercion with the use of a deadly weapon, possession of a credit card or debit card without the cardholder's consent, grand larceny, stop required on the signal of police officer, possession of stolen property, two counts of burglary while in possession of a deadly weapon, two counts of conspiracy to commit robbery, and three counts of assault with the use of a deadly weapon. Eighth Judicial District Court, Clark County; David B. Barker, Judge.

First, appellant Phillip Smith contends that there was insufficient evidence to support his convictions because he was not identified by the victims as one of the assailants before trial. We review the evidence in the light most favorable to the prosecution and determine whether any rational juror could have found the essential elements of the

SUPREME COURT
OF
NEVADA

(O) 1947A

13-04683

crimes beyond a reasonable doubt. McNair v. State, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

Here, the jury heard testimony that a GPS device was placed on Smith's vehicle which tracked the vehicle's movements in 15-second intervals throughout the duration of the charged crimes. According to the GPS surveillance, Smith's vehicle was located at the Capistrano Pines Apartments from 11:46 a.m. until 1:25 p.m. It then stopped in a Wells Fargo parking lot from 1:53 p.m. until 2:00 p.m. At 2:04 p.m., a detective observed Smith exit the vehicle at a nearby gas station. Between 6:04 p.m. and 6:27 p.m., the vehicle was located near the Sartini Plaza Apartments. Shortly after the vehicle exited the vicinity of the Sartini Plaza Apartments, a call came into dispatch that there had been a shooting at those apartments. During a high speed police pursuit, the vehicle slowed down in a residential neighborhood and Smith's codefendant exited the vehicle carrying a number of items including a handgun, air pistol, and different forms of identification belonging to a man who was robbed earlier that day at the Capistrano Pines Apartments. Other property stolen from the same victim was found at Smith's home. Smith was later apprehended after he crashed his vehicle into a bus.

A 64-year-old resident of the Capistrano Pines Apartments testified that sometime between 10:00 a.m. and 12:15 p.m. he heard a knock on the door to his apartment. When he opened the door, he saw two men. The man closest to the door, later identified as Smith, asked the resident where building 14 was. The resident took one or two steps outside his front door and pointed in the direction of the building. When the resident looked back at Smith, he brandished a handgun and ordered him back into the apartment. The two men placed a shirt and blanket

over his head, tied his hands and feet together, and made him sit in a chair in the living room before taking his wallet, ATM card, pin number, and other items from his apartment. Later that day, an unauthorized transaction was made on the victim's Wells Fargo account using his stolen ATM card and pin number. After the robbery, the victim identified Smith from a photographic line-up and later made an in-court identification.

A second victim residing at the Sartini Plaza Apartments testified that Smith and his codefendant robbed him at gunpoint and told him not to move or they would shoot him. When the victim got up from his chair and told the defendants to leave, Smith's codefendant shot him in the chest. A ballistics test confirmed that the handgun found next to Smith's codefendant in the residential neighborhood was the gun used to shoot the second victim. The victim made an in-court identification of Smith and his codefendant at trial and immediately after the robbery identified Smith from a series of photographs as possibly being one of his assailants.

We conclude that a rational juror could infer from these circumstances that Smith committed the charged crimes. See NRS 193.330; NRS 193.165(6); NRS 193.167; NRS 199.480(1); NRS 200.010; NRS 200.380(1); NRS 200.471; NRS 200.481; NRS 205.060(1), (4); NRS 205.220(2). The jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the convictions. Bolden v. State, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); see also Hernandez v. State, 118 Nev. 513, 531, 50 P.3d 1100, 1112 (2002) ("[C]ircumstantial evidence alone may support a conviction."); McNair, 108 Nev. at 56, 825 P.2d at 573 ("[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses.").

Second, Smith challenges his dual convictions for kidnapping and robbery at the Capistrano Pines Apartments and argues that his kidnapping conviction should be reversed because it was incidental to the robbery. Dual convictions for robbery and kidnapping arising from the same course of conduct will not be sustained unless the restraint or movement of the victim "stand[s] alone with independent significance from the act of robbery itself, create[s] a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve[s] movement, seizure or restraint substantially in excess of that necessary to its completion." Mendoza v. State, 122 Nev. 267, 275, 130 P.3d 176, 181 (2006). Here, after the robbery, the 64-year-old victim was left in his apartment with his head covered, his hands and feet tightly bound, and all of the phones disabled. We conclude that a rational juror could have inferred from these circumstances that the victim's physical restraints created a risk of danger substantially exceeding that necessarily present in the crime of robbery. Accordingly, Smith is not entitled to relief on this claim.

Third, Smith contends that this court should reverse his convictions because the State conducted an unreasonable search by attaching a GPS device to his vehicle in violation of the Fourth Amendment to the United States Constitution. See United States v. Jones, 565 U.S. ___, 132 S. Ct. 945 (2012). At the time this search was conducted, binding appellate precedent held that attaching a GPS device to a vehicle did not violate the Fourth Amendment. Osburn v. State, 118 Nev. 323, 327, 44 P.3d 523, 526 (2002); see also U.S. v. McIver, 186 F.3d 1119, 1126–27 (9th Cir. 1999). The United States Supreme Court has held that "searches conducted in objectively reasonable reliance on binding

appellate precedent are not subject to the exclusionary rule" because application of this rule "would do nothing to deter police misconduct" and therefore would not further the purpose of the rule. Davis v. United States, 564 U.S. ___, ___, 131 S. Ct. 2419, 2423-24, 2427 (2011); see also United States v. Pineda-Moreno, 688 F.3d 1087, 1090 (9th Cir. 2012). Smith fails to explain why this court should deviate from the reasoning in Davis. Moreover, Smith failed to preserve this error for review because he did not file a motion to suppress in the district court. Consequently, the record on appeal is inadequate for this court to make a determination about the reasonableness of the search, see Jones, 565 U.S. at ___, 132 S. Ct. at 954, or whether Smith had standing to bring this claim, see id. at 949 n.2, and therefore Smith cannot establish plain error, see Green v. State, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). Accordingly, Smith is not entitled to relief on this claim.

Fourth, Smith contends that he was denied the right to a fair and impartial trial because the district court erroneously admitted evidence of GPS surveillance of Smith and his codefendant which was inadmissible prior-bad-act evidence. See NRS 48.045(2). We disagree. "Trial courts have considerable discretion in determining the relevance and admissibility of evidence. An appellate court should not disturb the trial court's ruling absent a clear abuse of that discretion." Crowley v. State, 120 Nev. 30, 34, 83 P.3d 282, 286 (2004) (quotation marks omitted). Even if the surveillance of Smith's car was evidence of Smith's "other crimes, wrongs or acts," it was admissible to prove opportunity, intent, preparation, plan, and identity. See NRS 48.045(2). The district court guarded against possible unfair prejudice by limiting evidence of the surveillance to the duration of the charged crimes and we conclude that

the probative value of this evidence was not "substantially outweighed by the danger of unfair prejudice." See NRS 48.035(1). Therefore, we conclude that the district court did not abuse its discretion and Smith was not denied his right to a fair and impartial trial.

Fifth, Smith contends that the admission of video footage showing Smith being taken into custody and placed in the back of a patrol car after he crashed into a bus following a high speed chase was inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice, NRS 48.035, and its admission resulted in actual prejudice at trial. Smith failed to object to the admission of the video footage, and we review for plain error. NRS 178.602; Sterling v. State, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992). The decision to exclude relevant evidence under NRS 48.035 is left within the district court's sound discretion. Thomas v. State, 122 Nev. 1361, 1370, 148 P.3d 727, 734 (2006). The State contends that the video footage helped to establish Smith's identity as the driver. We agree. Moreover, Smith also agreed when he argued that identity was at issue in his case. Accordingly, we cannot conclude that the district court plainly erred by admitting the video. Green, 119 Nev. at 545, 80 P.3d at 95.

Sixth, Smith contends that the video showing him in custody in the back of a patrol car violated the constitutional presumption of innocence guaranteed by the United States and Nevada constitutions. See Haywood v. State, 107 Nev. 285, 287, 809 P.2d 1272, 1273 (1991). We disagree. A defendant is only presumed innocent until the contrary is proved. NRS 175.191. Before any evidence was presented, the district court explained to the jury that Smith was presumed innocent of all charges and that the State had the burden of proving each essential

element of the crimes beyond a reasonable doubt. See Leonard v. State, 117 Nev. 53, 66, 17 P.3d 397, 405 (2001) (explaining that a jury is presumed to follow instructions). This admonishment included Smith's charge for failing to stop on the signal of a police officer. See NRS 484B.550.

The State was required to prove beyond a reasonable doubt that (1) Smith drove a vehicle, (2) was signaled by a police officer in a readily identifiable police department vehicle to stop, (3) Smith failed to stop or otherwise attempted to elude the officer, and (4) Smith operated the vehicle in a manner which is likely to endanger other persons or was the proximate cause of damage to property. Id. The video footage challenged by Smith depicts several readily identifiable patrol cars with flashing red lights giving chase, a silver Honda that had just collided into the luggage compartment of a bus in the middle of an intersection, and Smith being taken out of the driver's seat of that vehicle and placed into a patrol car by police officers. Although we admit that this highly inculpatory video likely led to Smith's conviction for failing to stop on the signal of a police officer, we cannot say that Smith's conviction was the result of his fleeting appearance in the back of the patrol car. See Gates v. Zant, 863 F.2d 1492, 1501 (11th Cir. 1989) ("[A] defendant is not necessarily prejudiced by a brief or incidental viewing by the jury of the defendant in handcuffs."); see also Deck v. Missouri, 544 U.S. 622, 626 (2005) (prohibiting the "routine use of visible shackles during the guilt phase" (emphasis added)). Nor can we say that a jury might mistakenly use his appearance as evidence of his guilt on the other numerous charges against him or that a jury would assume that Smith remained in custody throughout his trial based on his arrest following the accident. See

Haywood, 107 Nev. at 287-88, 809 P.2d at 1273. Moreover, even if Smith's brief appearance in the back of the patrol car was error, we are confident that it did not contribute to the verdict. See Deck, 544 U.S. at 635 (explaining that this kind of error is not structural). Accordingly, Smith is not entitled to relief on this claim.

Seventh, Smith contends that the district court erred by denying his motion to sever. Specifically, Smith argues that he was prejudiced by joinder because he was unable to cross-examine his codefendant about his codefendant's voluntary statement to police officers that Smith was driving the silver Honda on the day the crimes occurred. Smith contends that this voluntary statement created a Bruton problem. See Bruton v. United States, 391 U.S. 123 (1968). In order to have a Bruton problem, a nontestifying defendant's confession which inculpates his codefendant must be introduced into evidence. Stevens v. State, 97 Nev. 443, 445, 634 P.2d 662, 664 (1981); see also Richardson v. Marsh, 481 U.S. 200, 208 (1987) (explaining that codefendant's statement must clearly implicate defendant in wrongdoing, and that the implication must appear on the face of the statement itself). Although Smith cites to excerpts from his codefendant's voluntary statement, he does not explain how these statements amount to a confession or even allege that any of these excerpts were introduced during trial. See NRAP 28(a)(9)(A) (explaining that appellant's brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Our review of the testimony reveals that Smith himself admitted to driving the vehicle throughout the entirety of his crime spree on direct examination. Moreover, even if the excerpts cited by Smith had been introduced in their entirety, amounted to a confession, and were

error, we conclude that they were harmless. See Harrington v. California, 395 U.S. 250, 254 (1969) (stating that Bruton violations are subject to harmless error review). Accordingly, Smith is not entitled to relief on this claim.

Eighth, Smith contends that the State's arguments at sentencing were improper and violated his due process rights. "So long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence, this court will refrain from interfering with the sentence imposed." Silks v. State, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976). The record does not demonstrate such prejudice. Accordingly, Smith is not entitled to relief on this claim.

Ninth, Smith contends that cumulative error warrants reversal. Because there was no error, and thus no error to cumulate, we conclude that no relief is warranted.

Having considered Smith's contentions and concluded that they lack merit, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

cc:    Hon. David B. Barker, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A